### HUNT, HELM, FERRIS & CO. v. ELBERT et al.

(District Court, W. D. Wisconsin. February 6, 1923.)

1. **Patents ⚖⇒328—1,066,195, claims 1 and 2, for stanchion, held invalid.**
   Claims 1 and 2 of patent No. 1,066,195, covering a stanchion consisting of an inwardly facing channel iron bar, with a wood insert substantially filling the channel, *held* invalid, as representing merely mechanical skill, and not invention.

2. **Patents ⚖⇒328—988,561, claim 1, for a cattle stall, held not infringed.**
   Claim 1 of patent No. 988,561, for a cattle stall covering longitudinal adjustment of stanchion supporting frames, to permit positioning of the animals with reference to the gutter, *held* not infringed.

3. **Patents ⚖⇒328—988,561, claim 4, for cattle stall, as limited, held valid, but not infringed.**
   Claim No. 4 of patent No. 988,561, for a cattle stall, as limited, in the light of the specifications, to the combination of a series of stanchion supporting frames with partitions and coupling devices, which in combination permit the release of the coupling devices and the removal of the frame, *held* valid, but not infringed.

In Equity. Suit by Hunt, Helm, Ferris & Co. against George A. Elbert and another. Bill dismissed.

Russell Wiles, of Chicago, Ill., for plaintiff.

L. T. Greist, of Chicago, Ill., and E. G. Siggers, of Washington, D. C., for defendants.

LUSE, District Judge. This is a suit in equity, in which complainant charges the defendants with infringement of two patents—one covering animal stalls, numbered 988,561, and issued April 4, 1911; the other covering cattle stanchions, numbered 1,066,195, issued July 1, 1913. Infringement of claims 1 and 4 of the stall patent, and claims 1 and 2 of the stanchion patent, is claimed.

[1] Taking up the stanchion patent first, it will be sufficient to set out in full claim No. 1:

"In a stanchion, side members each comprising an inwardly facing channel and a wood insert substantially filling the channel and projecting inwardly therefrom and having a rounded surface adapted to contact with the neck of the animal held by the stanchion."

The advantages claimed for plaintiff's patented stanchion, resulting from the use of the inwardly facing channel iron bar with a wood insert, are stated in the specifications to be as follows:

"The wooden heads on the inserts are much more comfortable for the cattle than the usual metal. The wood' insert, filling, as it does, the channel in

which it lies, adds greatly to the strength of the side member, so that a relatively light channel may be used. This arrangement thus saves something in the expense of the metal work of the device."

From the foregoing it is apparent that the scope of this patent is narrow, relating merely to the material of which stanchion side members are composed. It is clear that the side members of the stanchions manufactured and sold by the defendant Olson Manufacturing Company are substantially the same as the side members of plaintiff's patented device, and, if plaintiff's patent is valid, infringement is proven. The serious inquiry is whether or not the plaintiff's patent is valid. The evidence establishes that wooden side bars for stanchions were old in the art, as illustrated by the patent to Barnard, No. 746,913, issued December 15, 1903; also that wooden linings to metal side bars of stanchions were in use prior to plaintiff's claimed invention, as illustrated by the Harris patent, No. 942,639, issued December 7, 1909, and the Taylor patent, No. 608,730, issued August 9, 1898.

Furthermore, the use of channeled iron side bars in stanchions, with the channel facing outwardly, was also old, as illustrated by the Foster patent, No. 734,532, issued July 28, 1903, and the Ferris patent, No. 999,364, issued August 1, 1911. Again, wooden side bars, screwed into metallic ends, were disclosed by the Baker patent, No. 903,267, issued November 10, 1908. The improvement disclosed by plaintiff's patent over the prior art in stanchions is obtained by facing the channel of the side member inwardly and inserting a wooden strip into the channel, so that it fits tightly therein, and so forming the head or inner side of this wooden strip that it overlaps the edges of the channeled iron and presents an even and smooth surface, by which it is claimed the strength of the wooden strip and iron supplement one another, recesses in which dirt may accumulate are avoided, and the thrust of the animal confined in the stanchion presses the wooden strip more firmly into the channeled iron, instead of tending to splinter the wood and loosen the screws, as was the case formerly.

To fill the channel of a channeled iron with wood, for the purpose of decreasing weight and expense and permitting the two elements to supplement one another in strength, was also old, as illustrated by the Mesker patent, No. 435,848, issued September 2, 1890. Likewise the patent to Letchworth, No. 249,958, issued November 22, 1881, discloses a hame, composed of a cast metallic body provided with a groove or depression, which groove or depression was filled with wood to form one of the outer side surfaces of the hame. It is established by the evidence that from about 1904 or 1905 the Todd Manufacturing Company, of New Albany, Ind., and its successor, the National Hame & Chain Company, have manufactured and marketed what are called "Scotch hames," characterized by a pair of inwardly facing channeled hame members of metal, each having a wood insert substantially filling the channel, said wood insert projecting inwardly from the channel and having a rounded head surface, overlapping the edges thereof and adapted to contact with the leather surface of the collar on the neck of the horse embraced by the hame. It is clear that in these "Scotch hames" the advantage claimed for plaintiff's patent by way of so com-

bining the wood and iron that the thrust of the animal would tend to force the wood firmly into the channel of the iron, was fully realized.

In this state of the art I am of opinion that the improvement covered by plaintiff's stanchion patent represents merely mechanical skill and not invention. Full consideration has been given to the contention that delay in the discovery of plaintiff's improvement negatives the claim that the improvement is obvious; but, as I view it, the "Scotch hames" not only disclose the identical combination which is the subject of plaintiff's stanchion patent, but invoke identically the same functional principle, and, without giving the same undue weight, it may properly be mentioned that in the progress of plaintiff's patent through the Patent Office it was earnestly urged that the thrust of the cow confined in a stanchion when reaching for its food was the same as that of the ox in its yoke. Undoubtedly this is so, and a fortiori the same as the thrust of the horse upon its collar and hames. As I view it, the inwardly facing channeled insert with the wooden strip, manufactured, marketed, and used in the "Scotch hames," involves in an analogous art the adoption and public use of the improvement claimed by plaintiff. In view of these considerations, I am of opinion that the stanchion patent is invalid.

[2] Taking up the animal stall patent, No. 988,561, claim 1 reads as follows:

"The combination of a series of stanchion-supporting frames, partitions extending at an angle to said frames and located adjacent to the ends thereof, and means adjustably connecting said frames independently of each other with said partitions, for the purpose set forth."

By the phrase "for the purpose set forth" we are referred to the specifications, wherein the characteristic of adjustability is dealt with as follows:

"Each of the frames 15 is adjustable independently of the others back and forth upon the brackets 13, and the bars 27 for positioning the stanchions carried thereby, in order that the animals confined in the stanchions may be so positioned with relation to the gutter as to cause their droppings to fall into the latter."

Clearly, then, claim 1 contemplates longitudinal adjustment with reference to the gutter, after installation, which defendant's device does not permit.

It is earnestly insisted by plaintiff that the "unit construction" of stanchion frames and stalls is granted to it by this patent. The first five of the original claims of the patentee contained the following language:

"A series of stanchion supporting frames, each separate from the other and constituting independent units."

The latter part of this phrase, to wit, "each separate from the other and constituting independent units," was dropped out of the claims during the progress of the application through the Patent Office upon rejection by the Examiner as to the first four, and apparently by abandonment as to the fifth, and does not appear in the patent as issued. No appeal was taken from the Examiner's decision. In this state of

facts the conclusion is unavoidable that the "unit construction," so called, is not granted. In the light of these considerations, I am of opinion that claim 1 of this patent is not infringed.

[3] Claim 4 of plaintiff's patent reads as follows:

"4. The combination of a series of stanchion supporting frames, partitions interposed between said frames and extending at an angle thereto, the rear end of said partitions being located adjacent to the frames, and coupling devices carried by said frames at their opposite ends and engaging with the rear ends of said partitions, for securing said frames and partitions together."

Taking this claim literally, it reads on defendant's structure. Likewise, it seems to me, it reads on the structure disclosed by Neller in his patent, No. 1,062,295, patented May 20, 1913, subsequent to the patent in suit, but application for which was filed October 2, 1909, prior to the application for plaintiff's patent. The evidence discloses, also, that the Louden Machinery Company, of Fairfield, Iowa, manufactured and marketed the stanchion of the Neller patent from July, 1908, more than two years prior to the filing of the application for the patent under discussion. Thus read, claim 4 also reads upon the stall construction shown by the evidence to have been erected upon Woodend farm of A. C. Loring, of Zumbra Heights, Minn., in 1905, and used continuously since.

If claim 4 be given its literal meaning, I am persuaded that it is invalid, in view of the prior art. However, it may, and I think should, be read in the light of the specifications, which, in that regard, read as follows:

"It will be noted from the foregoing that each stanchion supporting frame is formed independently of the others, and that, by providing releasable connectors between each of such frames, as many of the latter may be grouped together as desired, to form a series of connected frames, and that such arrangement of frames permits of the ready adding to or subtracting from the number of stalls initially provided, as conditions require, without destroying the desired uniformity of structure. Furthermore, any one or more of intermediate frames of the series may be removed without affecting the others, as where it is desired that a passageway between frames be provided."

In addition the specifications disclose that each stanchion supporting frame is formed of an inverted U-shaped member of iron tubing and a lower crossbar connected with the lower ends of such member, and this crossbar is releasably and adjustably fastened to brackets, which, in turn, are imbedded in the curb. Thus each frame is releasably attached to both the brackets and the partitions, and such frame is one of the elements of plaintiff's combination. The true scope of claim 4 is, I think, the combination of some such frame with partitions and coupling devices, which in combination permit the release of the coupling devices and the removal of the frame, with the results stated in the specifications, above quoted. Defendant's structure does not permit of such release. The lower ends of the inverted U-bar of defendant's frame are of necessity permanently imbedded in the curb, from which they can be removed only after partial destruction of the curb. While possible to release one arm of defendant's coupling device from a frame, without interference with an adjacent frame, it would be an idle ceremony, unless followed by a partial destruction of the curb.

In defendant's combination it is quite apparent that after installation the structure is designed to be permanent, and it is not intended that the coupling devices be released, nor the frames detached. The former have capacity for lateral adjustment prior to installation, for the purpose of varying the width of the stalls, or varying the distance between the frames to avoid structural obstructions in the barn, but after installation they perform the single function of connecting the frames and partitions.

That part of the specification last above quoted, describing the frames as "formed independently," thus permitting "the ready adding to * * * the number of stalls initially provided," is deemed properly attributable to the "unit" idea, rejected by the Patent Office, as already pointed out. I am of opinion that claim 4 of plaintiff's patent must be thus limited to save it from invalidity, and, so limited, defendant's structure does not infringe.

Decree dismissing the bill, with costs, may be entered.